## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SOCORRO LUGO ROSARIO, | : | CIVIL ACTION |
| **Plaintiff,** | : | |
| | : | |
| vs. | : | NO.    **22-cv-4311** |
| | : | |
| KILOLO KIJAKAZI, | : | |
| **Acting Commissioner of Social Security,** | : | |
| **Defendant.** | : | |

### MEMORANDUM OPINION

**LYNNE A. SITARSKI**
**UNITED STATES MAGISTRATE JUDGE**                                **October 17, 2023**

Plaintiff Socorro Lugo Rosario brought this action seeking review of the Acting Commissioner of Social Security Administration's decision denying her claim for Social Security Disability Insurance (SSDI) and Supplemental Security Income (SSI) benefits under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f.  This matter is before me for disposition upon consent of the parties.  For the reasons set forth below, Plaintiff's Request for Review (ECF No. 10) is **GRANTED**, and the matter is remanded for further proceedings consistent with this memorandum.

## I.     PROCEDURAL HISTORY

On July 27, 2020, Plaintiff protectively filed for SSDI and SSI, alleging disability since June 2, 2020, due to hand and back problems, depression, blood clots, and headaches.  (R. 296-317, 326, 330).  Plaintiff's applications were denied at the initial level and upon reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge (ALJ).  (R. 162-69, 171-78, 181-200, 202-06).  Plaintiff, represented by counsel, and a vocational expert (VE) testified at the October 4, 2021 administrative hearing.  (R. 41-81).  On November 29, 2021, the ALJ issued

a decision unfavorable to Plaintiff.  (R. 8-35).  Plaintiff appealed the ALJ's decision, but the

Appeals Council denied Plaintiff's request for review on September 1, 2022, thus making the

ALJ's decision the final decision of the Commissioner for purposes of judicial review.  (R. 1-7).

On October 27, 2022, Plaintiff filed a complaint in the United States District Court for

the Eastern District of Pennsylvania and consented to my jurisdiction pursuant to 28 U.S.C. §

636(C) on November 10, 2022.  (Compl., ECF No. 1; Consent, ECF No. 6).  On February 27,

2023, Plaintiff filed a Brief and Statement of Issues in Support of Request for Review.  (Pl.'s Br.,

ECF No. 12).  The Commissioner filed a Response on April 28, 2023, and on May 12, 2023,

Plaintiff filed a reply.  (Resp., ECF No. 13; Reply, ECF No. 14).

## II.    FACTUAL BACKGROUND[1]

The Court has considered the administrative record in its entirety and summarizes here

the evidence relevant to the instant request for review.

Plaintiff was born on December 25, 1964, and was 55 years old on the alleged disability

onset date.  (R. 326).  She completed high school and medical billing training.  (R. 331).

Plaintiff previously worked in a day care.  (*Id.*).

### A.    Medical Evidence

On January 7, 2020, Plaintiff underwent a right ganglion cyst excision.  (R. 585).  On

May 21, 2020, she presented to Anne Drozdoski, D.O., at the SJRHN Downtown Residency

Program (SJRHN) in Reading, Pennsylvania, complaining of post-surgical pain not relieved with

Tylenol, although previously prescribed Oxycodone had helped somewhat.  (R. 586).  She also

reported ongoing weakness, diminished grip strength and limited range of motion, not improved

---

[1]  Because Plaintiff's request for review implicates only her physical impairments, the
Court does not summarize the evidence relating to any mental impairments.

2

by twice weekly therapy over the last past three months.  (*Id.*).  Plaintiff was prescribed Naproxen, warned that she might not regain full strength and referred back to her surgeon.  (R. 587).

On September 14, 2020, Plaintiff saw Dr. Drozdoski for right calf pain and nodules on her hands.  (R. 572).  Dr. Drozdoski noted that Plaintiff's calf pain stemmed from a fall a few months earlier and was "much improved" and "nearly completely resolved" with no ongoing tenderness, warmth or swelling.  (R. 572).  The nodules were at the distal interphalangeal (DIP) joints on both index fingers and the right little finger.  (*Id.*).  Plaintiff reported that they were painful to touch and stiff in the morning but that the pain improved with the Mobic she had been taking for her leg pain.  (*Id.*).  Dr. Drozdoski recommended that she switch to Tylenol long-term.  (R. 573).

On December 10, 2020, consultative medical examiner Ziba Monfared, M.D., noted that Plaintiff has a history of carpal tunnel in her right hand since 2016 and that in January 2020 she had release surgery and to remove a Ganglion cyst, but her pain and numbness persisted.  (R. 415-16).  Plaintiff reported using a cane and wrist brace to Dr. Monfared but brought neither with her, and needed no assistance throughout the examination.  (R. 416-17).  Her activities of daily living (ADLs) including watching television, listening to the radio, cooking thrice weekly, cleaning and doing laundry weekly, and shopping monthly, although she does not drive.  (R. 416).  She denied needing any help at home or having any childcare responsibilities.  (*Id.*).  She squatted only 50 percent due to suboptimal effort.  (*Id.*).  Musculoskeletal results were normal and she had full strength in her upper and lower extremities.  (R. 417-18).  Plaintiff lacked hand and finger dexterity and had difficulty with range of motion and zipping, buttoning, and tying in her right hand, but had full use of her left hand.  (R. 418).  Her prognosis was described as fair.  (*Id.*).

In an attached Medical Source Statement of Ability to Do Work-Related Activities (Physical), Dr. Monfared opined that Plaintiff could never lift or carry over 50 pounds; occasionally handle and finger with her right hand, lift and carry 21 to 50 pounds, perform all postural movements, and tolerate exposure to all environmental conditions (except operating a motor vehicle and vibrations, which she could frequently tolerate); and frequently lift and carry up to 20 pounds, use her hands bilaterally to perform all other manipulations (except those noted above), and operate bilateral foot controls.  (R. 421-25).  She further opined that Plaintiff could sit for eight hours continuously and in a workday and stand/walk for four hours continuously and seven hours in a workday.  (R. 422).  She indicated that Plaintiff does not require a cane to ambulate and that Plaintiff could tolerate moderate, office-level noise.  (R. 422, 425).  Dr. Monfared concluded that Plaintiff could not sort, handle and use paper and files but that she could shop, prepare simple meals and feed herself, care for her hygiene, travel alone, use public transportation, ambulate without an assistive device, walk at a reasonable pace on a rough or uneven surface, and climb a few steps at a reasonable pace with a single handrail.  (R. 425-26).  Plaintiff's range of motion was normal in all joints except in her lumbar spine and hands, particularly the right one.  (R. 428-31).  She had full grip strength in her left hand but only four-out-of-five strength in her right one.  (R. 429).

On January 20, 2021, State agency medical consultant Jolita Burns, M.D., opined that Plaintiff could stand and walk or sit for six hours in an eight-hour workday; occasionally lift and carry up to 20 pounds, balance, and climb ramps, stairs, ladders, ropes and scaffolds; and frequently lift and carry up to 10 pounds, stoop, bend, kneel, crouch, and crawl.  (R. 90-91).  She denied that Plaintiff had any manipulative limitations.  (R. 91).  On reconsideration, on April 9, 2021, State agency medical consultant Crescenzo Giulio Calise, M.D., reached the same conclusions.  (R. 123-25).

Plaintiff returned to SJRHN on April 13, 2021, for follow up for bilateral osteoarthritis causing severe pain due to arthritic changes affecting the DIP joints, especially on each index finger as confirmed by x-ray. (R. 575). She also had osteophyte formation on the right little finger DIP joint. (*Id.*). Plaintiff reported she could no longer write, cook or grip things, that her symptoms were made worse by recent cold weather, and that she had run out of Mobic, taking Naproxen and Tylenol instead. (R. 575-76). Dr. Drozdoski observed that Plaintiff could not make a full fist with either hand due to pain and that her grip strength was decreased. (R. 576). She increased Plaintiff's Meloxicam dosage, directed her to stop taking Naproxen, provided a limit on the amount of Tylenol she should take, and referred her to orthopedics for possible injections. (*Id.*).

On April 26, 2021, Plaintiff was seen by Tobias Long, M.D., at SJMG – Exeter Specialty Clinic in Reading for pain in her index and little fingers bilaterally, beginning five months prior, worsening especially with cold weather and activity, and with swelling in the joints. (R. 614). The notes indicate that her only hand surgery was to remove the ganglion cyst and this was well-healed, with stable joints, full range of motion, and intact sensation. (*Id.*). She denied other hand trauma. (*Id.*) Plaintiff had Heberden's nodes, tender to palpitation, present at the DIP joints on fingers on both hands. (*Id.*). Plaintiff reported that Motrin helped with pain. (*Id.*). She received an injection in her left index finger DIP joint with planned additional injections in he right index and little finger DIP joints if the first injection was successful and additional imaging if it was not. (R. 614-15). She was also referred to rheumatology. (R. 614). X-rays taken that day showed bilateral osteoarthritis without acute fracture or osseous erosion. (R. 618, 620).

Plaintiff again returned to SJRHN on June 15, 2021, for a right thumb injury suffered while serving a volleyball, resulting in severe pain, swelling and decreased range of motion. (R. 578). She reported recent corticosteroid injections in her left index finger DIP joint with good

results.  (*Id.*).  She was also continuing to take Tylenol as needed and Naproxen.  (*Id.*).  She was referred for imaging and given a thumb splint.  (R. 579).  On September 20, 2021, Plaintiff was seen by Colin Sulpizio, D.O., and Aalok Malankar, D.O., for sharp, constant, worsening left knee pain with "clicking" and instability, originating one week prior without an apparent cause and exacerbated by movement, especially climbing stairs.  (R. 609-10).  Plaintiff had tried Tylenol, Naprosyn, rest and ice.  (R. 609).  Drs. Sulpizio and Malankar diagnosed a likely meniscal injury and ordered an x-ray, physical therapy, and an orthopedic surgery consultation.  (R. 611).  They administered Toradol in the office and recommended rest, ice, elevation, compression, Tylenol for the rest of the day, and NSAIDs beginning the following day.  (*Id.*).

**B.      Non-Medical Evidence**

The record also contains non-medical evidence.  In an Adult Function Report dated August 28, 2020, Plaintiff described her ADLs as eating, preparing simple meals (and harder ones with assistance), doing laundry (with assistance opening the washer door and adding detergent), shopping in stores, walking for exercise two to three times per week, bathing, watching television, taking care of her daughter, socializing with others in person and on the phone, picnicking with family weekly, and going to church weekly.  (R. 337-40).  She reported difficulty lifting, squatting, bending, reaching, sitting, using her hands, putting on pants and shoes, and brushing her hair.  (R. 337, 341).  She is right-handed.  (R. 341).  She stated that she can walk 15 minutes before having to rest for 20 minutes.  (*Id.*).  She indicated that she takes hot showers and "pills" and uses a "hot patch" and physician-prescribed crutches as needed due to pain.  (R. 342, 344).  She characterized her right hand pain as "hard pressure," radiating throughout her arm, lasting hours and worsened by activity, carrying things, cold temperatures and attempting to fall asleep.  (R. 345).

At the October 4, 2021 administrative hearing, Plaintiff testified that she last worked in 2018 ironing designs and affixing sequins onto shirts and pants before resigning due to problems with her hands.  (R. 48).  She also cleaned houses off-the-books until June 2020.  (R. 50).  She explained that she can use her right hand to brush her hair and teeth, eat with a fork or spoon, write with a pen, and grip the handle of a mug "a little bit" and lift it to her mouth to drink, but that she could not grip a 16-ounce water bottle.  (R. 54).  She can drink from glasses but sometimes drops them so she instead buys plastic cups.  (R. 54-55, 62).  She cannot carry a gallon of milk and has difficulty picking up coins.  (R. 62, 64).  She reported wearing a hand brace for the past three to four months.  (R. 55).  She can make salad, mix juice, iron clothes and do the dishes but requires assistance to mop, cook and cut chicken.  (R. 55, 59).  She can bathe and dress herself but has problems buttoning pants and tying laces so she wears legging and Velcro sneakers.  (R. 56, 63).  She claimed that she participates in no hobbies or activities outside the home.  (R. 56-57).  She had been jogging between 10 minutes and an hour at a time up to a few months prior to the hearing but stopped after spraining her ankle.  (R. 57-58).  She also played volleyball with her daughters approximately once per week on Saturday or Sunday until injuring her right thumb, resulting in her having to wear a hand brace for approximately three weeks.  (R. 58-59).  Other ADLs included listening to music, watching television and reading books.  (R. 59).

Plaintiff further testified that she has "like little balls in [her] fingers" on her left hand. (R. 61).  She stated that she suffers from bilateral hand pain, worse in the right one, and bilateral cramping, worse when it's cold or raining or when she is trying to sleep.  (R. 62).  She reported taking pain medication, receiving injections and attending physical therapy for hand pain.  (R. 56, 61, 65).  She also has daily back pain if she sits more than 30 minutes or bends, which requires her to lie down.  (R. 68).  She further reported pressure in her left knee, worsening over

7

the last two weeks, for which she had been prescribed physical therapy and a brace.  (R. 56, 66-67).

### III.   ALJ'S DECISION

Following the most recent administrative hearing, the ALJ issued a decision in which she made the following findings:

1.    The claimant meets the insured status requirements of the Social Security Act through December 31, 2021.

2.    The claimant has not engaged in substantial gainful activity since June 2, 2020, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3.    The claimant has the following "severe" impairments: carpal tunnel syndrome, osteoarthritis, and major depressive disorder (20 CFR 404.1520(c) and 416.920(c)).

4.    The claimant does not have an impairment or combination of impairments that met or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform median work as defined in 20 CFR 404.1567(c) and 416.967(c) except she can reach/handle/finger frequently, she needs to avoid outdoor work and extreme cold, and she is limited to unskilled work with simple routine tasks, simple decisions, and occasional changes in the workplace, with no limits on interacting with coworkers/supervisors or the public.

6.      The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.      The claimant was born on December 25, 1964 and was 55 years old, which is defined as an individual of advanced age, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.      The claimant has at least a high school education (20 CFR 404.1564 and 416.964).

9.      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11.     The claimant has not been under a disability, as defined in the Social Security Act, from June 2, 2020, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(R. 8-35).  Accordingly, the ALJ found Plaintiff was not disabled.  (R. 30).


IV.     **LEGAL STANDARD**

To be eligible for benefits under the Social Security Act, a claimant must demonstrate to the Commissioner that he or she cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death

or which has lasted or can be expected to last for a continuous period of at least 12 months.  42

U.S.C. § 1382c(a)(3)(A).  A five-step sequential analysis is used to evaluate a disability claim:

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity.  If she is not, then the Commissioner considers in the second step whether the claimant has a "severe impairment" that significantly limits her physical or mental ability to perform basic work activities.  If the claimant suffers a severe impairment, the third inquiry is whether, based on the medical evidence, the impairment meets the criteria of the impairment listed in the "listing of impairments," . . . which result in a presumption of disability, or whether the claimant retains the capacity to work.  If the impairment does not meet the criteria for a listed impairment, then the Commissioner assesses in the fourth step whether, despite the severe impairment, the claimant has the residual functional capacity to perform her past work.  If the claimant cannot perform her past work, then the final step is to determine whether there is other work in the national economy that the claimant can perform.

*Sykes v. Apfel*, 228 F.3d 259, 262-63 (3d Cir. 2000); *see also* 20 C.F.R. §§ 404.1520(a)(4),

416.920(a)(4).  The disability claimant bears the burden of establishing steps one through four.

If the claimant is determined to be unable to resume previous employment, the burden shifts to

the Commissioner at step five to establish that, given the claimant's age, education, work

experience, and mental and physical limitations, he is able to perform substantial gainful

activities in jobs existing in the national economy.  *Poulos v. Comm'r. of Soc. Sec.*, 474 F.3d 88,

92 (3d Cir. 2007).

Judicial review of a final decision of the Commissioner is limited.  A district court is

bound by the factual findings of the Commissioner if they are supported by substantial evidence

and decided according to correct legal standards.  *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir.

1999).  Substantial evidence is "more than a mere scintilla" and "such relevant evidence as a

reasonable mind might accept as adequate."  *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 118

(3d Cir. 2000) (citations omitted).  Even if the record could support a contrary conclusion, the

decision of the ALJ will not be overruled as long as there is substantial evidence to support it. *Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986).  The court has plenary review of legal issues.  *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999).

## V.    DISCUSSION

In her request for review, Plaintiff raises a single claim: "The ALJ's RFC determination is unsupported by substantial evidence as she failed to properly evaluate the opinion evidence." (Pl.'s Br., ECF No. 10, at 1).  Specifically, she contends that the ALJ erred in her evaluation of the opinions of the consultative examiner, Dr. Monfared, and the State agency consultants, Drs. Burns and Calise.  (*Id.* at 3-22).

The Commissioner modified Social Security's regulations in 2017, changing the way ALJs evaluate medical evidence.  The prior regulations, governing claims filed before March 27, 2017, divided medical sources into three categories: treating, examining, and non-examining. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c).  ALJs were to weigh each medical opinion and could sometimes afford controlling weight to opinions from treating sources. *See id.* §§ 404.1527(c), 416.927(c).

Under the new regulations, ALJs do not place medical sources into these categories and can no longer afford controlling weight to any opinion.  *See id.* §§ 404.1520c(a), 416.920c(a). Instead, ALJs now evaluate the persuasiveness of each medical opinion and each prior administrative medical finding.  *See id.* §§ 404.1520c(a), 416.920c(a).  Five factors determine persuasiveness:  (1) supportability; (2) consistency; (3) relationship with the claimant, including length, purpose, and extent of the treatment relationship, as well as frequency of examinations and whether the medical source examined the claimant firsthand; (4) specialization; and (5) other factors, like "evidence showing a medical source has familiarity with the other evidence in the

claim or an understanding of our disability program's policies and evidentiary requirements." *Id.*

§§ 404.1520c(c), 416.920c(c).  Supportability and consistency are the most important factors.  *Id.*

§§ 404.1520c(b)(2), 416.920c(b)(2).  ALJs need not explain their determinations regarding the

other factors, but they must discuss supportability and consistency. *Id.* §§ 404.1520c(b)(2),

416.920c(b)(2).

### A.    Dr. Monfared

Regarding Dr. Monfared's opinion, the ALJ wrote:

> Consultative examiner Dr. Monfared prepared an opinion on
> December 10, 2020 in which she found that the claimant could
> lift/carry up to 20 pounds frequently and 21 to 50 pounds
> occasionally (Exhibit 3F, at 7). She opined that the claimant could
> sit eight hours, stand seven hours, and walk seven hours total in an
> eight-hour workday (Exhibit 3F, at 8). She found that the claimant
> could handle and finger occasionally with her right hand and could
> reach, feel, and push/pull frequently with her right hand (Exhibit
> 3F, at 9). She opined that the claimant could use her left hand
> frequently. She found that the claimant could use either foot
> frequently to operate foot controls. She opined that the claimant
> could perform postural activities occasionally (Exhibit 3F, at 10).
> She found that the claimant could tolerate frequent exposure to
> operating a motor vehicle and vibrations and occasional exposure
> to other environmental conditions (Exhibit 3F, at 11). She opined
> that the claimant could tolerate moderate (office) noise. This
> opinion is generally well supported by Dr. Monfared's consultative
> examination of the claimant. On physical examination by Dr.
> Monfared, squat was 50 percent due to suboptimal effort (Exhibit
> 3F, at 3). Hand and finger dexterity was not intact on the right hand
> (Exhibit 3F, at 4). Strength of the grip was 4/5 on the right hand.
> She had difficulty with zipping, buttoning, and tying with the right
> hand. There was some decreased range of motion of the right hand
> (Exhibit 3F, at 14), the right thumb (Exhibit 3F, at 15), and the
> lumbar spine (Exhibit 3F, at 17). Otherwise, this physical
> examination was generally within normal limits. This opinion is
> somewhat consistent with the other evidence of record. Based on
> the claimant's activities, which show physical activity and interest
> in activities of daily living, the undersigned finds that the claimant
> is limited to medium work and frequent hand use. Therefore, Dr.
> Monfared's opinion is found to be somewhat persuasive.

(R. 26-27).

### 1.    The Parties' Positions

Plaintiff argues that the ALJ failed to explain how she found Dr. Monfared's opinion only somewhat persuasive, and rejected her conclusion that Plaintiff could handle and finger with her right hand just "occasionally," when the ALJ otherwise acknowledged that the opinion was supported by Dr. Monfared's physical examination of Plaintiff.  (Pl.'s Br., ECF No. 10, at 5, 7). Plaintiff points to several pieces of supporting information within the opinion, including Plaintiff's documented history of carpal tunnel, continuing hand pain even after surgery, lack of hand and finger dexterity, limited range of motion, inability to perform thumb-to-fingertip maneuvers, diminished grip strength, and difficulty with zipping, buttoning, and tying.  (*Id.* at 6-7 (citing R. 415, 418, 428-29)).  She accuses the ALJ of concluding that the opinion was not fully consistent with the evidence as a whole while ignoring her own earlier conclusion that the opinion was supported by Dr. Monfared's findings.  (*Id.* at 8).  She acknowledges that these two conclusions are not necessarily incompatible but maintains that the ALJ failed to adequately and logically explain supportability and consistency based on the evidence.  (*Id.*).  Plaintiff takes issue with the ALJ's discussion of consistency, in particular, contending that the ALJ addressed this factor "only . . . in a boilerplate and conclusory manner."  (*Id.* at 9).  She also points to several pieces of evidence disregarded by the ALJ but tending to undermine the ALJ's determination that Dr. Monfared's opinion was somewhat inconsistent with the rest of the record, including excision of a large cyst on her right wrist; ongoing complaints and documentation of pain, swelling, bruising, tenderness, muscle weakness, decreased grip strength, limited range of motion and inability to make a fist; a diagnosis of bilateral osteoarthritis and associated Heberden's nodes at her DIP joints; and injections in the fingers of her left hand.  (*Id.* at 10-12 (citing R. 540-41, 543-44, 549-55, 572, 578, 586, 607, 614-15, 618, 620)).

In addition, Plaintiff identifies two errors in the ALJ's discounting of Dr. Monfared's

opinion on the basis of Plaintiff's ADLs.  (*Id.* at 12-15).  First, she complains that the ALJ circularly reasoned that Dr. Monfared's opinion is less than fully persuasive because of Plaintiff's ADLs showing that she can perform medium work and use her hands frequently when such RFC determinations are supposed to await the consideration of all the evidence, including the medical source opinions.  (*Id.* at 12-13 (citing *Zimmer v. Colvin*, No. 15-21, 2015 WL 5178179, at *2 (W.D. Pa. Sept. 4, 2015); *Jury v. Colvin*, No. 3:12-CV-2002, 2014 WL 1028439, at *10 (M.D. Pa. Mar. 14, 2014); *Farr v. Colvin*, No. 3:12-CV-1414, 2014 WL 47379, at *11 (M.D. Pa. Jan. 6, 2014))).  Second, she submits that, in any event, the ALJ's reliance on Plaintiff's unspecified "physical activity and interest in activities of daily living" is insufficiently detailed to permit meaningful review and, even if one were to attempt to glean from elsewhere in the decision what ADLs the ALJ had in mind, ADLs like the ability to engage in basic personal care, help her daughter with beauty school projects, or exercise, would not serve as a basis for the partial rejection of Dr. Monfared's opinion that Plaintiff could only occasionally use her right hand to handle and feel, particularly where there was no evidence that she engaged in any of these activities on more than a limited basis.  (*Id.* at 14-15).  Plaintiff further alleges that the ALJ ignored additional qualifying information about these ADLs, such as the fact that Plaintiff is limited by her hand impairment in the types of clothes and shoe fasteners she can manipulate and in the types of cups from which she can drink, preferring plastic over glass due to her propensity to drop them.  (*Id.* at 15).

Plaintiff observes that, as confirmed by the VE at the administrative hearing, she would have been found disabled if the ALJ had credited the manipulative limitations determined by Dr. Monfared.  (*Id.* at 20).  She accuses the ALJ of instead substituting her own lay interpretation of the evidence to confirm the RFC she formulated even though such an interpretation is not substantial evidence.  (*Id.* at 20-21 (citation omitted)).  She argues that because the ALJ rejected

the opinion of Dr. Monfared, and later those of the State agency physicians, regarding her right-handed manipulative limitations, the ALJ should have obtained an additional consultative examination or contacted a medical source for an opinion.  (*Id.* at 21).

The Acting Commissioner responds generally that the Act's definition of disability is stringent and that the ALJ correctly conducted the five-step sequential analysis in determining that Plaintiff was not disabled.  (Resp., ECF No. 13, at 6-7 (citations omitted)).  She then sets forth additional background law regarding how an RFC is formulated and summarizes the ALJ's decision, pointing out that Plaintiff played volleyball, failed to bring her wrist brace and cane to the consultative examination, received effective treatment, and had only one hand surgery and no other trauma or "significant hand problems."  (*Id.* at 8-11 (citations omitted)).  She observes that no treating source evaluated Plaintiff's ability to perform work-related activities.  (*Id.* at 10).  She denies that the ALJ was required to incorporate Dr. Monfared's limitation regarding only occasional handling and fingering with the right hand simply because the ALJ found the opinion otherwise persuasive.  (*Id.* at 11-12) (citations omitted).  The Acting Commissioner further claims that, "[r]eading the decision as a whole," the reasoning of the ALJ "can reasonably be discerned" because "the ALJ's prior discussion of the medical evidence" in fact doubled as "an evaluation that explained why Plaintiff's modestly abnormal findings were consistent with limitations to medium work," such that she "was not required to repeat this analysis again."  (*Id.* at 12 (citations omitted)).  The Acting Commissioner reiterates that this evidence included Plaintiff's ability to play volleyball and effective treatment resulting in reduced symptoms.  (*Id.* at 13).  She closes by suggesting that Plaintiff merely seeks to have the evidence reweighed and that substantial evidence supports the ALJ's decision.  (*Id.* at 13-14 (citations omitted)).

Plaintiff replies that the Acting Commissioner's arguments amount to an impermissible *post hoc* rationalization not set forth by the ALJ in her decision and that the Acting

Commissioner does not defend the reasons actually articulated by the ALJ.  (Reply, ECF No. 14, at 1-2, 5 (citations omitted)).  She points out that the Acting Commissioner incorrectly recasts the ALJ's determination that Dr. Monfared's opinion was "well supported" as finding only that it was "somewhat supported" and again accuses her of substituting her own lay interpretation of what the medical evidence shows in an attempt to bolster her mischaracterization of the ALJ's decision.  (*Id.* at 2-3).  She also asserts that the Acting Commissioner ignores evidence of Plaintiff's impairment that even the ALJ acknowledged in her discussion of Dr. Monfared's opinion.  (*Id.* at 3).  She observes that the Acting Commissioner incorrectly restates not only the ALJ's supportability determination, but also her consistency determination, by recasting her finding that the opinion was "somewhat consistent" as instead stating that it was "inconsistent." (*Id.* at 3-4).  She notes that despite finding the opinion "somewhat consistent" with the record evidence the ALJ did not indicate what evidence was considered in reaching this determination. (*Id.*).  Additionally, Plaintiff repeats her contentions that the ALJ improperly compared Dr. Monfared's opinion to her own premature RFC determinations rather than the record evidence and that the Acting Commissioner, in formulating her *post hoc* justifications, cherry-picks evidence she believes is helpful to her position while ignoring contrary evidence, including ongoing substantial impairment notwithstanding treatment.  (*Id.* at 4-6).

Plaintiff dismisses the Acting Commissioner's reliance on: (1) a doctor's visit at which Plaintiff did not report hand problems because the purpose of the visit was to address knee pain; (2) Plaintiff's ability to perform limited personal care like using utensils and a mug and brushing her teeth and hair because these activities do not show the ability to use her hands on a sustained basis; and (3) Plaintiff's volleyball activities with her daughter because they do not demonstrate an ability to engage in the manipulative maneuvers at issue and in any event Plaintiff ceased these activities in the summer of 2021 following right thumb surgery.  (*Id.* at 6).  Plaintiff agrees

with the Acting Commissioner that the ALJ was not required to accept all the limitations

identified by Dr. Monfared simply because she accepted others, but Plaintiff insists that the

ALJ's rejection of Dr. Monfared's findings regarding Plaintiff's ability to engage in certain

manipulations with her right hand was nonetheless erroneous for the reasons stated above.  (*Id.* at

7).  Finally, she notes that the ALJ's rejection of this portion of Dr. Monfared's opinion left the

ALJ with no opinion on this specific topic.  (*Id.*).

## 2. Analysis

The ALJ's decision, in the words of the Seventh Circuit Court of Appeals, "puts the cart

before the horse . . . ."  *Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir. 2012).  The ALJ determined

that Dr. Monfared's opinion was only somewhat consistent with the other record evidence

because Plaintiff's ADLs showed that she could engage in medium work and frequent hand use.

(R. 27).  But Plaintiff's exertional level and ability to use her hands are part of what the ALJ was

supposed to be determining in formulating Plaintiff's RFC.  In reaching her conclusion,

therefore, the ALJ improperly treated Plaintiff's RFC as a settled fact rather than something that

was being shaped by her consideration of each piece of evidence, including Dr. Monfared's

opinion itself.  Such an approach raises an "[o]bvious problem[ ]" because "the ALJ's finding of

residual functional capacity is not 'above' in the opinion but is yet to come," and treating it

otherwise fails in the responsibility to make "the determination of capacity . . . based on the

evidence . . . rather than forcing the [evidence] into a foregone conclusion."  *Filus*, 694 F.3d at

868; *see also Jury v. Colvin*, No. 3:12-CV-2002, 2014 WL 1028439, at *10 (M.D. Pa. Mar. 14,

2014) (citing *Filus*, 694 F.3d at 868).

Nonetheless, remand "is not always necessary" if the ALJ has still adequately explained

her conclusions.  *Id.*  Here, the ALJ stated only that she found the opinion somewhat consistent

and that Plaintiff engaged in "physical activity" and had an "interest in activities of daily living."

17

(R. 27).  Even assuming that the ALJ intended to assert a causal link, i.e., that Dr. Monfared's

opinion was not fully consistent *because* of Plaintiff's ADLs, the ALJ's explanation is

inadequate.  The ALJ does not specify upon which ADLs she relies, but in any event Plaintiff's

ADLs do not substantiate the conclusion that Plaintiff could, contrary to Dr. Monfared's findings,

frequently use her right hand to engage in all manipulations, including handling and fingering.

(R. 27).  Elsewhere in her opinion, the ALJ noted that Plaintiff could perform the following

ADLs:

> The claimant testified that sometimes she helped her daughter with
> her projects at her beauty school. She stated that she could use her
> right hand to brush her hair or brush her teeth and to eat with a fork
> or spoon. She testified that she could grip her fingers around the
> handle of a mug a little bit, and she could lift the mug up to her
> mouth to drink from it. She stated that she could write with a pen.
> The claimant indicated in testimony that she was jogging/running
> for exercise until a few months earlier. She played volleyball
> multiple times before she injured her thumb in June 2021.

(R. 26).

Plaintiff's assistance with her daughter's beauty school projects apparently involved

helping with makeup application and hair care or styling, (R. 49), but doing so only "sometimes"

does not establish that Plaintiff can finger and handle with her right hand "frequently."  (*See* SSR

83-10, 1983 WL 31251, at *6 (Jan. 1, 1983) ("'Frequent' means occurring from one-third to two-

thirds of the time.")).  The ALJ failed to develop the record as to how often Plaintiff brushed her

hair and teeth, used utensils, gripped a mug "a little bit" to drink, or wrote with a pen, but, as

Plaintiff notes, these types of activities are normally performed only a few times and/or for a few

minutes per day.  Plaintiff's remaining activities, jogging/running and volleyball, would not have

involved the type of fine motor movements at issue here.  (*See* SSR 85-15, 1985 WL 56857, at *7

(Jan. 1, 1985) ("handling" means "seizing, holding, grasping, turning or otherwise working

primarily with the whole hand or hands" and "[f]ingering involves picking, pinching, or

otherwise working primarily with the fingers") (internal quotations omitted)).  In any event, Plaintiff also did not perform these activities "frequently."  (R. 56-58 (testifying that she used to jog for exercise for 10 minutes to an hour before hurting her ankle and that she played volleyball with her daughters on some weekend days before injuring her thumb while doing so and then ceasing the activity)).

In addition, the ALJ appears to have cherry-picked these ADLs without considering qualifying information about them or evidence of limitations surrounding Plaintiff's other ADLs. *See Piper v. Saul*, No. 2:18-1450, 2020 WL 709517, at *4 (W.D. Pa. Feb. 12, 2020) ("The ALJ is not entitled to 'cherry pick' favorable evidence and ignore records that run counter to her findings."); *Fanelli v. Colvin*, No. 3:16-CV-1060, 2017 WL 551907, at *9 (M.D. Pa. Feb. 10, 2017) ("[An] evaluation[ ] where the evaluator mentions only isolated facts that militate against the finding of disability and ignores much other evidence that points another way, amounts to a 'cherry-picking' of the record which this Court will not abide."); *Griffith v. Astrue*, 839 F. Supp. 2d 771, 783 (D. Del. 2012) ("Plaintiff correctly argues that an ALJ is not permitted to 'cherry-pick' only that that evidence that supports her position.").  For example, although Plaintiff is able to drink from a mug on a limited basis, she buys plastic cups because she tends to drop whatever she is drinking.  (R. 62).  She cannot lift a gallon of milk.  (*Id.*).  She also wears leggings instead of pants to avoid buttons and Velcro sneakers to avoid laces.  (R. 56).  But the ALJ makes no mention of any of this evidence tending to undermine her conclusions regarding Plaintiff's ADLs.

The Acting Commissioner contends that the ALJ did not have to accept Dr. Monfared's opinion as to Plaintiff's limited ability to handle and finger with her right hand simply because he found the opinion otherwise persuasive, but nowhere does Plaintiff make that argument.  On the contrary, she acknowledges that an opinion may be partially credited and partially rejected,

but maintains that in this case the partial rejection of the opinion about her right hand was improper for the reasons stated above.  (Reply, ECF No. 14, at 7).  The Acting Commissioner also fails to explain the import of her observation that no treating source evaluated Plaintiff's ability to perform work activities.  (Resp., ECF No. 13, at 10).  If anything, this fact merely highlights that the ALJ did not discount Dr. Monfared's opinion because it conflicted with that of a treating medical provider.  Citing the portion of the ALJ's decision block quoted above, the Acting Commissioner further submits that support for the ALJ's "frequent hand use" RFC determination can be gleaned from the decision when it is considered in its entirety, (Resp., ECF No. 13, at 12 (citing R. 25-26)), but the Court has already explained that this evidence was cherry-picked and does not substantiate the ALJ's finding that Plaintiff could frequently handle and finger with her right hand.  To the reasons given by the ALJ for discounting Dr. Monfared's opinion in part – Plaintiff's "physical activity and interest in activities of daily living" – the Acting Commissioner adds Plaintiff's failure to bring her assistive devices to the consultative examination, corticosteroid injections from Dr. Long, the fact that she had no "other" hand surgeries except to remove a ganglion cyst on her wrist, and subsequent examinations not showing significant problems, (Resp., ECF No. 13, at 9), but none of these were the reasons given by the ALJ, who cited only her ADLs.  (R. 27).  As such, they represent an improper *post hoc* rationalization that cannot support the ALJ's decision.  *See Schuster v. Astrue*, 879 F. Supp. 2d 461, 466 (E.D. Pa. 2012) (the Commissioner may not offer "a post-hoc rationalization" or justification because "[t]he ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision") (quoting *Keiderling v. Astrue*, No. 07-2237, 2008 WL 2120154, at *3 (E.D. Pa. May 20, 2008)).

For these reasons, the Court will remand this matter for further consideration of Dr. Monfared's opinion.

**B.     Drs. Burns and Calise**

Regarding these physicians' opinions, the ALJ wrote:

> State agency medical consultant Jolita Burns, M.D., found on
> January 20, 2021 that the claimant could perform light work with
> occasional climbing and balancing and frequent stooping,
> kneeling, crouching, and crawling (Exhibit 1A, at 9–11; Exhibit 2A,
> at 9–11). This opinion is not well supported by Dr. Burns'
> explanation for her opinion. She cited to a December 30, 2020
> physical examination at which squat was 50 percent due to
> suboptimal effort (Exhibit 1A, at 11; Exhibit 2A, at 11). Hand and
> finger dexterity was not intact on the right hand, and the claimant
> had difficulty with range of motion. Strength of the grip was 4/5 on
> the right hand and the claimant had difficulty with zipping,
> buttoning, and tying with the right hand. Otherwise, this physical
> examination was generally within normal limits. Lumbar spine
> imaging showed mild degenerative changes. The claimant did not
> require help with bathing, dressing, toileting, continence, or eating.
> She had a BMI of 33.8. Dr. Burns stated that her residual
> functional capacity was limited to accommodate the pain and
> limited range of motion. This opinion is not consistent with the
> other evidence of record. Based on the evidence discussed above,
> the undersigned finds that the claimant can perform medium work,
> but she can reach/handle/finger frequently and she needs to avoid
> outdoor work and extreme cold. The claimant indicated in
> testimony that she was jogging/running for exercise until a few
> months earlier. She played volleyball multiple times before she
> injured her thumb in June 2021. The claimant's activities are not
> consistent with disabling conditions – they show physical activity
> and interest in activities of daily living. Therefore, Dr. Burns'
> opinion is found to be not persuasive.
>
> . . . .
>
> State agency medical consultant Crescenzo Giulio Calise, M.D.,
> affirmed Dr. Burns' findings on reconsideration on April 9, 2021
> (Exhibit 5A, at 12–14; Exhibit 6A, at 12–14). This opinion is not
> well supported by Dr. Calise' explanation for his opinion. He
> provided the same explanation for his opinion that Dr. Burns
> provided for her opinion, except he added that there appeared to be
> no changes or additional treatment for the condition or new
> impairments added since the prior determination (Exhibit 5A, at 15;
> Exhibit 6A, at 15). This opinion is found to be not consistent with
> the other evidence of record for the same reasons Dr. Burns'
> opinion is found to be not consistent with the other evidence of
> record. Therefore, Dr. Calise' opinion is found to be not
> persuasive.

(R. 27-28).

        **1.**      **The Parties' Positions**

Beginning with the supportability factor, Plaintiff contends that the ALJ failed to explain how she considered Drs. Burns' and Calise's findings provided in support of their opinions that Plaintiff could perform light work and that the ALJ instead merely listed those findings without further evaluation. (Pl.'s Br., ECF No. 10, at 17). She denies that these findings, which include degenerative changes, limited range of motion and back pain, would not support a limitation to light work as opined by these physicians. (*Id.*). She further denies that the ALJ could have rejected these opinions in their entirety, including the limitation to light work, on the basis that she otherwise determined that Plaintiff had greater restrictions on the use of her hands than they opined (i.e., only "frequent" hand use rather than no restrictions). (*Id.*).

Turning to consistency, the ALJ cited the same evidence cited in her consistency analysis of Dr. Monfared's opinion, (R. 28), and, as such, Plaintiff argues that it fails for the reasons discussed in the preceding section, including that the ALJ deployed circular reasoning in comparing the evidence to her own predetermined findings. (Pl.'s Br., ECF No. 10, at 18-19). Plaintiff also repeats her argument regarding the ALJ's reliance on her ADLs but focuses on those most implicated in the determination of her exertional level, jogging/running and playing volleyball. (*Id.* at 19-20). In addition, she claims that the ALJ failed to reconcile her rejection of the State agency physicians' opinions with Plaintiff's chronic back pain, limited range of motion in the lumbar spine and when squatting, degenerative changes in the lumbar spine, emergency room and later follow-up visits after a right lower leg injury, and treatment for knee problems. (*Id.* at 19). She observes that if the ALJ had credited Drs. Burns' and Calise's opinions regarding her "light work" exertional level, she would have been deemed disabled under the Medical-Vocation Guidelines. (*Id.* at 21).

22

The Acting Commissioner counters that substantial evidence supports the ALJ's findings as to these physicians' opinions for the same reasons that it supports those related to Dr. Monfared's opinion.[2]  (Resp., ECF No. 13, at 11).  She reiterates that if the decision is read "as a whole" it permits meaningful review and explains why Plaintiff's only minimally abnormal findings were consistent with limitations to medium work.  (*Id.* at 12-13).  She again suggests that Plaintiff improperly seeks to have the evidence reweighed.  (*Id.* at 13).

In reply, Plaintiff asserts that the Acting Commissioner's brief is nonresponsive to her opening brief and highlights that the Acting Commissioner offers only "little argument" in support of her conclusion that the ALJ properly considered the State agency opinions.  (Reply, ECF No. 14, at 7-8).  Regarding supportability, she points out that the Acting Commissioner merely recites the ALJ's findings without explaining how this evidence failed to support the conclusion that Plaintiff could perform only light work.  (*Id.* at 8).  As for consistency, she points out that the Acting Commissioner's reliance on the ALJ's conclusory statement that the State agency opinions are "inconsistent with Plaintiff's activities" fails to substantively address her arguments that the ALJ did not explain this factor and notes that insofar as the ALJ relied upon her running/jogging and playing volleyball these activities do not substantiate a finding that she could perform "medium work."  (*Id.* at 8-9).  She observes that neither the Acting Commissioner nor the ALJ purports to address whether the opinions were consistent with the other medical evidence of record.  (*Id.* at 8).  In closing, Plaintiff rejects the contention that she seeks to have the evidence reweighed and, on the contrary, maintains that she merely seeks to have the correct

---

[2]  This assertion is emblematic of the Acting Commissioner's response, which comingles her defense of the ALJ's treatment of both the consultative examiner's and State agency physicians' opinions.  However, upon closer inspection, much of the response pertains only to Dr. Monfared's opinion.  The Court summarizes here those arguments that relate to both sets of opinions or only those of Drs. Burns and Calise because Dr. Monfared's opinion was fully addressed in the preceding section.

legal standards applied to the ALJ's consideration of the opinion evidence in this matter.  (*Id.* at 9).

### 2.   Analysis

The ALJ's consideration of Drs. Burns' and Calise's opinions suffers from some of the same defects as her consideration of Dr. Monfared's opinion.  Initially, the ALJ's decision "puts the cart before the horse" in determining that these opinions were not consistent with her finding that Plaintiff could perform medium work because the ALJ was still in the process of figuring out what exertional level work Plaintiff could perform.  *Filus*, 694 F.3d at 868.  Although not necessarily requiring remand itself, *see id.*, this error was compounded when the ALJ cited as her reason for finding the State agency opinions inconsistent only that Plaintiff engaged in "physical activity" and had an "interest in activities of daily living" without specifying what those activities were.  (R. 27).  To the extent that the ALJ relied upon Plaintiff's jogging/running and playing volleyball referenced in the paragraph of the decision at issue, it is unclear how participation in these activities would establish an ability to perform medium but not light work, as the ALJ found, because these activities do not involve substantial lifting or carrying and "the primary[3] . . . difference between light work and medium work is the lifting and carrying weight requirements[,]" specifically how often a claimant can lift and carry weight between 10 and 50 pounds, if at all.  *Jarnutokowski v. Kijakazi*, 48 F.4th 769, 774 (7th Cir. 2022) (citing 20 C.F.R. § 404.1567(b)-(c)).  Additionally, Plaintiff again argues that the ALJ's reasoning as to the subject opinions can be gleaned from reading the decision "as a whole," but in support of this assertion

---

[3] Another difference is that "[t]he considerable lifting required for the full range of medium work usually requires frequent bending-stooping," *Jarnutokowski*, 48 F.4th at 774 (citing SSR 83-10), but here Drs. Burns and Calise determined that Plaintiff could frequently engage in these maneuvers so that finding was not their basis for limiting Plaintiff to light work. (R. 91-93, 124-26).

she cites only unspecified "modestly abnormal findings," (Resp., ECF No. 13, at 12), which, more importantly, were never cited by the ALJ as the basis for finding Drs. Burns' and Calise's opinions inconsistent with the other evidence of record.  (*See* R. 28 (noting purporting inconsistency but then listing only the ALJ's own premature RFC findings and certain ADLs of Plaintiff)).  Thus, this argument is another improper *post hoc* rationalization by the Acting Commissioner.  *See Schuster v. Astrue*, 879 F. Supp. 2d 461, 466

For these reasons, the Court will remand this matter for further consideration of Drs. Burns' and Calise's opinions as well.

## VI.     CONCLUSION

For the reasons set forth above, Plaintiff's request for review is **GRANTED**.  This matter is remanded for further proceedings consistent with this memorandum.

BY THE COURT:


  /s/ Lynne A. Sitarski
LYNNE A. SITARSKI
United States Magistrate Judge